Richard **LILLARD**, Individually, and as Trustee of the V.W. Lillard Trust dated May 24, 1990, and Lucinda Lillard, Plaintiffs,

v.

Arthur Filiatrault **STOCKTON**; Stockton Trust, Inc., Tactical Equity Analytics Management, Inc., Stockton Capital Management Securities, Inc., Capital Equity Resources Management Company, Inc.; and the Dymas Fund, LP, and Dymas Partners, LP, Defendants.

No. 01–CV–671–P(J).

United States District Court, N.D. Oklahoma.

June 16, 2003.

Thomas James McGeady, Logan & Lowry, Todd E. Kolczun, Logan & Lowry, Vinita, OK, for plaintiffs.

John Maston O'Neal, James A. Ryan, Quarles & Brady Streich Lang LLP, Phoenix, AZ, Rodney Alan Edwards, Robert A. Huffman, Jr., Melissa Mailath, Edwards & Huffman, Tulsa, OK, for defendants.

### *ORDER AFFIRMING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

PAYNE, District Judge.

On April 16, 2003, the United States Magistrate Judge entered his Findings and Recommendation. Plaintiffs filed an objection to the Magistrate Judge's Finding and Recommendation within the time prescribed by law. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(a).

This Court finds the Report and Recommendation of the Magistrate Judge is supported by the record. Therefore, upon full consideration of the entire record and the issues presented herein, this court finds and orders that the Report and Recommendation entered by the United States Magistrate Judge on April 16, 2003, be **AFFIRMED** and **ADOPTED** by this Court as its Findings and Order. Accordingly, this case shall be set for status and scheduling conference by separate order.

### *REPORT AND RECOMMENDATION*

Joyner, United States Magistrate Judge.

### *TABLE OF CONTENTS*

I. RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1090

II. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1090
 A. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1091
 1. THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1091
 2. PLAINTIFFS' INTRODUCTION TO DEFENDANTS . . . . . . . . . . . . . . . . 1092
 3. PLAINTIFFS' INVESTMENT INTO THE DYMAS FUND . . . . . . . . . . 1092

III. PLEADING STANDARDS APPLICABLE TO PLAINTIFFS' CLAIMS . . . . . . . 1093
 A. FED. R. CIV. P. 12(B)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1093
 B. FED. R. CIV. P. 9(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1094
 C. THE PRIVATE SECURITIES LITIGATION REFORM ACT ("PSLRA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1094

IV. PERSONAL JURISDICTION ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1095
 A. STANDARDS FOR EVALUATING PERSONAL JURISDICTION . . . . . . . 1095
 B. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1096
 1. DEFENDANT CAPITAL EQUITY'S CONTACTS WITH OKLAHOMA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1096
 2. DEFENDANT SCMSI'S CONTACTS WITH OKLAHOMA . . . . . . . . . . 1097
 (A) GENERAL PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . 1097
 (B) SPECIFIC PERSONAL JURISDICTION . . . . . . . . . . . . . . . . . . . . . 1098
 (1) SPECIFIC JURISDICTION OVER CAPITAL EQUITY . . . . . . 1098
 (2) SPECIFIC JURISDICTION OVER SCMSI . . . . . . . . . . . . . . . . 1100

V. OTHER DISPOSITIVE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1100

A. FAILURE TO STATE A CLAIM UNDER THE 1934 ACT FOR UNLAWFUL MISREPRESENTATIONS OR OMISSIONS IN VIOLATION OF SECTION 10(B)/RULE 10B–5 .....................1100
 1. OVERVIEW.......................................................1100
 2. FAILURE TO SATISFY FED. R. CIV. P. 9(B) STANDARDS: FAILURE TO PLEAD FRAUD WITH PARTICULARITY UNDER RULE 9(B) AND THE PSLRA ..........................1102
 3. FAILURE TO PLEAD FACTS SHOWING DEFENDANTS ACTED WITH THE REQUISITE STATE OF MIND (SCIENTER) PURSUANT TO THE PSLRA .....................1107
 4. NO ALLEGATION OF LOSS CAUSATION ..........................1109
B. STATE LAW FRAUD CLAIMS INSUFFICIENT UNDER FED. R. CIV. P. 9(B) .........................................................1110
 1. ALLEGATION OF MISREPRESENTATIONS AND OMISSIONS IN VIOLATION OF 71 OKLA. STAT. § 408(A)(2) .................1110
 2. ACTUAL FRAUD .................................................1111
 3. CONSTRUCTIVE FRAUD .........................................1112
C. NO PRIVATE RIGHT OF ACTION UNDER SECTION 17(A) OF THE 1933 ACT ......................................................1113
D. SALE OF UNREGISTERED SECURITIES .............................1114
 1. FAILURE TO PLEAD FACTS SUPPORTING A CLAIM THAT DEFENDANTS WERE NOT PROPERLY EXEMPT FROM REGISTRATION UNDER THE 1933 ACT OR OKLAHOMA LAW .............................................................1114
 (A) FEDERAL SECURITIES CLAIMS BARRED BY THE ONE–YEAR STATUTE OF LIMITATIONS ...................1114
 (B) STATE LAW CLAIMS PREEMPTED UNDER NMSIA .........1115
E. FAILURE TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR BREACH OF FIDUCIARY DUTY .....................1116
F. FAILURE TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR NEGLIGENCE ........................................1118
G. PLAINTIFFS' CLAIMS HAVE ABATED DUE TO FAILURE TO PROPERLY SERVE DEFENDANTS, WITH THE EXCEPTION OF THE DYMAS FUND, L.P., WITHIN THE 120–DAY PERIOD REQUIRED BY FED. R. CIV. P. 4(M) ..............................1120
H. PLAINTIFFS CANNOT STATE A CLAIM FOR CONTROL PERSON LIABILITY AGAINST ARTHUR STOCKTON BECAUSE THEY FAILED TO PROPERLY ALLEGE A VIOLATION OF SECURITIES LAWS BY ANY OF THE DEFENDANTS ..............1120
 1. FEDERAL LAW SECURITIES VIOLATIONS UNDER THE 1934 ACT (SECTION 10(B)/RULE 10B–5) AND THE 1933 ACT FOR SALE OF UNREGISTERED SECURITIES ......................1120
 (A) CONTROL PERSON LIABILITY UNDER THE 1934 ACT ......1121
 (B) CONTROL PERSON LIABILITY UNDER THE 1933 ACT ......1121
 2. STATE LAW SECURITIES VIOLATIONS FOR UNLAWFUL MISREPRESENTATIONS OR OMISSIONS AND THE SALE OF UNREGISTERED SECURITIES ...........................1122
 (A) STATE LAW VIOLATIONS FOR UNLAWFUL MISREPRESENTATIONS OR OMISSIONS .................1122
 (B) STATE LAW VIOLATIONS FOR THE SALE OF UNREGISTERED SECURITIES .............................1123

VI. RECOMMENDATION ....................................................1123

VII. OBJECTIONS ...........................................................1123

## RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS

Now before the undersigned United States Magistrate Judge are several Motions to Dismiss filed by Defendants in the above-titled action. Defendants Capital Equity Resources Management Company, Inc. ("Capital Equity") and Stockton Capital Management Securities, Inc. ("SCMSI") filed Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2), asserting lack of personal jurisdiction in Oklahoma. [Doc. Nos. 25–1, 26–1]. Capital Equity and SCMSI additionally move to dismiss all claims against them pursuant to Fed. R.Civ.P. 12(b)(6), the Private Securities Litigation Reform Act ("PSLRA"), and Fed.R.Civ.P. 9(b). [Doc. Nos. 25–1, 26–1]. Defendants The Dymas Fund, L.P. ("Dymas Fund"), Tactical Equity Analytics Management, Inc. ("TEAM"), Stockton Trust, Inc. ("Stockton Trust"), and Arthur F. Stockton ("Stockton"), similarly move to dismiss all claims against them pursuant to Fed.R.Civ.P. 12(b)(6), the PSLRA, and Fed.R.Civ.P. 9(b). [Doc. Nos. 4–1, 27–1, 30–1]. Defendant Dymas Partners, L.P. ("Dymas Partners") has been dismissed from this action without prejudice. [Doc. No. 49]. Plaintiffs have admitted that no such entity by the name Dymas Partners, L.P. exists.

Defendants' motions to dismiss were referred to the undersigned United States Magistrate Judge for Report and Recommendation. [Doc. No. 50]. The undersigned has reviewed the parties' briefs and exhibits, relevant case law, and heard oral arguments on the motions to dismiss on April 11, 2003. Accordingly, the undersigned recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motions to Dismiss. [Doc. Nos. 4–1, 25–1, 26–1, 27–1, 30–1]. Specifically, the undersigned has recommended that the District Court grant Defendants' motions to dismiss all of Plaintiffs' claims as against all Defendants, with the exception of the following: (1) Plaintiffs' claim against Individual Defendant Arthur Stockton for breach of fiduciary duty/inappropriate investment advice; and (2) Plaintiffs' claim against Defendant Arthur Stockton for negligence. Additionally, the undersigned has recommended that Plaintiffs' claim for violation of federal securities law under the 1933 Act for the sale of unregistered securities be dismissed without prejudice, and leave granted to amend Plaintiffs' Complaint, in order for Plaintiffs to set forth details of ongoing purchases and facts specifying what unregistered securities were bought or sold so as to fall within the applicable one-year statute of limitations. The undersigned also recommends that Plaintiffs' claim of control person liability for violation of the 1933 Act in the sale of unregistered securities be dismissed without prejudice because Plaintiffs' potential to amend their Complaint and set forth details bringing their claim within the one-year statutory period may impact the control person liability analysis.

## INTRODUCTION

Plaintiffs Richard Lillard, individually and as trustee of the V.W. Lillard Trust, dated May 24, 1990, and Lucinda Lillard bring this action to recoup losses sustained after they pursued certain investments, including investment in a "hedge fund" known as The Dymas Fund Limited Partnership ("Dymas Fund"). In their Complaint filed September 10, 2001, Plaintiffs raise several causes of action, including:

(1) Breach of Fiduciary Duty (inappropriate investment advice);

(2) Sale of Unregistered Securities;

(3) Securities Fraud under Section 10(b) of the Securities Exchange Act/Rule 10b–5 (alleged misrepresentations and omissions);

(4) Alleged misrepresentations and omissions in violation of Section 17(a) of the Securities Act of 1933 (the "1933 Act");

(5) Violation of 71 Okla. Stat. § 408(A)(2);

(6) Actual fraud,

(7) Constructive fraud; and

(8) Negligence.

[Doc. No. 1, Complaint]. Plaintiffs complain that their investment in the Dymas Fund declined during the dramatic bear market that began in 2000.

Plaintiffs initially served only the Dymas Fund. On February 11, 2002, five months after filing their Complaint, Plaintiffs served Defendants Stockton, Stockton Trust, TEAM, SCMSI, and Capital Equity. Defendants now move to dismiss Plaintiffs' claims on the following grounds:

(1) Lack of personal jurisdiction (Defendants Capital Equity and SCMSI);

(2) Failure to plead fraud claims with particularity required under Rule 9(b) and the PSLRA;

(3) No private right of action exists under Section 17(a) of the 1933 Act;

(4) Failure to allege facts demonstrating that an offering of interests in the Dymas Fund should have been registered; or, in the alternative, Plaintiffs' federal securities claims for the unlawful sale of unregistered securities are barred by the one-year statute of limitations, and Plaintiffs' state law claims are preempted by the National Market Securities Improvement Act ("NMSIA");

(5) Failure to properly allege a violation of federal or state securities laws for either unlawful misrepresentations

or omissions or for the sale of unregistered securities by any of the Defendants; thus precluding a claim for control-person liability against Arthur Stockton;

(6) Insufficiency as a matter of law in Plaintiffs' claims for breach of fiduciary duty and negligence; and

(7) Failure to effect service upon Defendants, with the exception of the Dymas Fund, L.P., within the 120–day period required under Fed.R.Civ.P. 4(m); thus, Plaintiffs' claims against those Defendants have abated.

Defendants have incorporated by reference the briefs of the other Defendants in this action. Therefore, Defendants' briefs will be analyzed in conjunction for purposes of this Report and Recommendation.

## I. BACKGROUND[1]

### A. THE PARTIES

Plaintiff Richard Lillard brought this suit in his individual capacity and in his capacity as Trustee of the V.W. Lillard Trust, dated May 24, 1990. Mr. Lillard's wife, Lucinda Lillard, is also a Plaintiff in this action. [Complaint at ¶¶ 1–3]. The Dymas Fund is a Nevada Limited Partnership with its principal place of business in Las Vegas, Nevada. [Complaint at ¶ 8]. The Dymas Fund's stated objective, according to Defendants, was to provide a significant investment rate of return through aggressive trading in equity securities. TEAM is Dymas Fund's corporate General Partner. Stockton Trust is an Arizona chartered trust company. SCMSI is an Arizona corporation and licensed broker dealer. Capital Equity is a Nevada corporation providing corporate accounting

---

1. At this stage of the proceedings, no facts have been established for the record. The facts given are those the undersigned has ascertained upon a review of Plaintiffs' Complaint, the Confidential Private Operating Memorandum, Subscription Agreement, and Limited Partnership Agreement (referred to by Plaintiffs in the Complaint, but not attached), and the briefs of all the parties.

and payroll services. Arthur Stockton is the Chairman and President of Stockton Trust, SCMSI, and TEAM.

### B. Plaintiffs' Introduction to Defendants

Plaintiffs opened an investment account with Stockton Trust in 1995. Plaintiffs chose an "aggressive" stance on investment objectives for their investment profile. Plaintiffs signed Investment Policy Statements on June 15, 1995. [Doc. No. 4, Exhibit A, Investment Policy Statement, Aggressive Profile, June 15, 1995].[2] Plaintiffs updated their investment objectives in July 1998, once again selecting the category for "aggressive" investment strategy. [Doc. No. 4, Exhibit B, Investment Profile Questionnaire, July 27, 1998]. In the same questionnaire, Richard Lillard wrote that, among the investment considerations in the Lillards' portfolio, "safety of principal/income" should *"never"* be the main concern. *Id.* The Lillards signed another Investment Policy Statement on July 27, 1998, reaffirming their "Aggressive Profile" objective. [Doc. No. 4, Exhibit C].

### C. Plaintiffs' Investment into The Dymas Fund

Plaintiffs signed a Subscription Agreement on May 30, 2000, directing that their investment be moved from Stockton Trust in Arizona to the Nevada-based Dymas Fund. In the agreement, Plaintiffs warranted that they were "accredited investors," as defined in Regulation D in the 1933 Act; that they were qualified purchasers, defined by the Investment Company Act; and that they met all suitability standards imposed by applicable laws. [Doc. No. 4, Exhibit D, May 30, 2000 Subscription Agreement]. Plaintiffs were provided copies of a Confidential Private Offering Memorandum ("CPOM") prior to signing the Subscription Agreement. The CPOM described the investment and risks involved in the Dymas Fund. [Doc. No. 4, Exhibit E]. Plaintiffs warranted in their Subscription Agreement that they had received and read the CPOM. [Doc. No. 4, Exhibit D at 2]. In their Complaint, Plaintiffs admit receiving the CPOM. [Complaint at ¶ 34].

The CPOM and the Subscription Agreement stated that the Dymas Fund was not registered under the Securities Act of 1933, and that interests in the Dymas Fund were being offered in reliance on federal and state registration exemptions for non-public offerings. The CPOM also described the investment strategy for the Dymas Fund, which included short-term and intermediate trading. [Doc. No. 4, Exhibit E, CPOM at 2, 8–10]. A bold-type warning in the description of the Dymas Fund's objectives stated that the "investment program is speculative and entails substantial risks." [Doc. No. 4, Exhibit E at 10]. A seven page recitation of "risk factors" followed the warning. *Id.* at 11–17. The CPOM further noted that neither the partnership nor the general partner

**2.** The undersigned will consider documents whose contents are referred to in the Complaint and are central to Plaintiffs' claim, but which were not physically attached to the Complaint in a ruling on a Motion to Dismiss. *See Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir.2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir.1997) ("If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied"). Defendants note that Plaintiffs refer to the Dymas Fund Confidential Private Operating Memorandum and the Subscription Agreement for the Dymas Fund in their Complaint, [Complaint at ¶ 34]. The Subscription Agreement specifically refers to the Limited Partnership Agreement for the Dymas Fund, and Plaintiffs repeatedly refer to the Dymas Fund in their Complaint. Similarly, Plaintiffs specifically refer to their investment objectives in their Complaint. [Complaint at ¶ 49].

had been registered under the Investment Company Act or the Investment Advisory Act. *Id.* at 36–37.

Plaintiffs suffered significant losses in the value of their accounts in the 2000–2001 bear market. Plaintiffs claim they lost most of their life savings, in what they termed a "dubious investment scheme," through the vehicle of the Dymas Fund. Plaintiffs were introduced to Arthur Stockton through the First National Bank of Miami, Oklahoma, which suggested that Plaintiffs contact Stockton for investment advice [Doc. No. 11]. Plaintiffs assert that Stockton convinced them to invest in a new "hedge-fund" he was creating after he gained their confidence and trust. *Id.* Plaintiffs further contend that, at all times relevant to this matter, they were not accredited investors and were unsophisticated and lacking in knowledge of business matters pertaining to the handling and investing of money and matters relating to stock market investments and unregistered securities. [Complaint at ¶¶ 12–13]. At the hearing, Plaintiffs' counsel noted that Plaintiffs' total investment was approximately $900,000.00, of which only about $100,000.00 remained upon closing the accounts. Plaintiffs contend that Defendants assured them that no security would be held beyond a ten percent (10%) drop in market price, and that preservation of capital was a primary objective. However, Plaintiffs nonetheless realized a substantial loss of value in their accounts in excess of ninety percent (90%). [Complaint at ¶ 23].

## II. PLEADING STANDARDS APPLICABLE TO PLAINTIFFS' CLAIMS

### A. Fed.R.Civ.P. 12(b)(6)

In ruling on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), the Court will assume as true all well-pleaded facts in Plaintiff's complaint, view them in a light most favorable to Plaintiff, and make all reasonable inferences in favor of Plaintiff. *See Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). "Dismissal is proper only if it appears beyond reasonable doubt that the plaintiff can prove within such allegations no set of facts in support of the claim which would entitle him to relief." *See Bryson v. City of Edmond,* 905 F.2d 1386, 1390 (10th Cir. 1990) (citing *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987)).

It does not necessarily follow, however, that every assertion in the complaint must be taken as true. Rather, "[a] motion to dismiss under Rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *See Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976).

> While, of the purposes of a motion to dismiss, facts well pleaded must be taken as true, unsupported conclusions of the pleader may be disregarded, especially when limited or negated by the substance of facts pleaded.

*Oppenheim v. Sterling,* 368 F.2d 516, 519 (10th Cir.1966).

> When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate. . . .

*Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir.1989) (citations omitted). A Court must examine whether the factual allegations state a valid claim upon which relief can be granted. *See Oppenheim,* 368 F.2d at 519.

In the context of securities litigation, the Tenth Circuit has warned that dismissal is "difficult to obtain" due to the fact-sensitive nature of the relevant issues. . . . Dismissal is appropriate, however, "where the alleged misstatements

or omissions are plainly immaterial," or where the plaintiff has failed to satisfy established pleading requirements. *See In re Sprint Corp. Securities Litigation,* 232 F.Supp.2d 1193, 1213 (D.Kan. 2002) (citing *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir.1997)) (citations omitted).

### B. Fed.R.Civ.P. 9(b)

All claims alleging fraud must be pled with particularity pursuant to Fed.R.Civ.P. 9(b). It follows, therefore, that claims alleging a violation of Section 10(b) of the 1934 Act and SEC Rule 10b–5 must also be pled with particularity because they are based in fraud. *See Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1010 (10th Cir.1986) (the particularity requirement of Rule 9(b) is applicable in securities fraud cases); *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992).

■ Rule 9(b) requires a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *See Schwartz,* 124 F.3d at 1252 (citing *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir. 1991)). Similarly, where fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as "by the defendants" are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth. *See Bruns v. Ledbetter,* 583 F.Supp. 1050, 1052 (S.D.Cal.1984).

### C. The Private Securities Litigation Reform Act ("PSLRA")

The PSLRA was enacted by Congress in 1995 to deter plaintiffs from filing abusive securities frauds claims, in part by elevating the pleading standards for securities fraud. *Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1258 (10th Cir.2001). The PSLRA mandates particular detail regarding allegedly fraudulent statements and omissions:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant–
>
> > (A) made an untrue statement of a material fact; or
> >
> > (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

*See* 15 U.S.C. § 78u–4(b).

In addition, the PSLRA requires a plaintiff to set forth particular facts supporting allegations that a defendant acted with a particular state of mind.

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b) (emphasis added). Any complaint failing to conform with the pleading requirements of the PSLRA "shall" be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A).

## III. PERSONAL JURISDICTION ANALYSIS

The undersigned will first analyze the motions to dismiss by Defendants Capital Equity and SCMSI, which seek dismissal of Plaintiffs' claims against them pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. [Doc. Nos. 25–1, 26–1].

### A. STANDARDS FOR EVALUATING PERSONAL JURISDICTION

■ The United States Supreme Court has held that individuals have a liberty interest, protected by the due process clause, in not being subject to the binding judgments of a forum with which the individual has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In order to be subject to the Court's jurisdiction, not only must the due process clause be satisfied, but the law of the forum state must also authorize the exercise of jurisdiction under the circumstances. Thus, the test for exercising long-arm jurisdiction over a nonresident of the forum is to determine first whether the exercise of jurisdiction is authorized by a forum statute and, if so, whether such exercise of jurisdiction would be consistent with the constitutional requirements of due process. In Oklahoma, however, this two-part inquiry collapses into a single due process analysis because the current Oklahoma long-arm statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." *See* 12 Okla. Stat. § 2004(F); *see also Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416–17 (10th Cir.1988) (establishing the personal jurisdiction inquiry under Oklahoma law).

■ A federal court may, consistent with the due process clause of the Constitution, exercise personal jurisdiction over a nonresident defendant so long as minimum contacts exist between the defendant and the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* at 292, 100 S.Ct. 559. The sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, and the plaintiff's claims arise out of those activities. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996) ("The contacts must reflect purposeful availment *and* the cause of action must arise out of those contacts."). *See generally, Rambo*, 839 F.2d at 1417 (reiterating this general test for personal jurisdiction).

The "minimum contacts" test protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. Moreover, "it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Woodson*, 444 U.S. at 291, 100 S.Ct. 559.

■ Jurisdiction over corporations may be either general or specific. If a defendant has purposefully directed its activities at residents of the forum, and the injuries alleged arise out of or relate to those activities, a court may, consistent

with the due process clause, exercise "specific" jurisdiction over the defendant. In contrast, when the suit does not arise from or relate to the defendant's contacts with the forum, a court may exercise "general" jurisdiction over the defendant based on the defendant's presence in or accumulated contacts with the forum. *Rudzewicz,* 471 U.S. at 473 n. 15, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). However, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts." *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. *See generally, OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090–91 (10th Cir.1998); *Rambo,* 839 F.2d at 1418. Thus, to establish general jurisdiction, the defendant must be conducting substantial and continuous local activity within the forum state. *Soma Medical Int'l v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999).

**B.** ANALYSIS

■ Both Defendant Capital Equity and Defendant SCMSI argue they are not subject to personal jurisdiction in the state of Oklahoma. Accordingly, the contacts of each Defendant with Oklahoma must be evaluated to determine if the due process clause warrants exercise of jurisdiction over them.

### 1. Defendant Capital Equity's Contacts with Oklahoma

Capital Equity is a Nevada corporation, its principal place of business in Las Vegas, Nevada. [Doc. No. 25, Exhibit A, Stockton affidavit at ¶ 7]. Capital Equity is a payroll, bookkeeping, and leasing services company. It leases equipment, facilities, and services to small businesses.

Arthur Stockton is the President of Capital Equity. [Doc. No. 25, Exhibit A, Stockton affidavit at ¶ 2]. Capital Equity confines its business to the states of Arizona and Nevada. Capital Equity was listed as a potential affiliate service provider to the Dymas Fund in the CPOM on the contingency that Capital Equity might provide payroll, bookkeeping, or leasing services to the Dymas Fund. However, no such services were provided by Capital Equity to the Dymas Fund.

Capital Equity maintains no offices or employees within Oklahoma, nor does it pay taxes in Oklahoma, visit customers in Oklahoma, advertise or solicit business, maintain fax or phone listings, or conduct any business within the state of Oklahoma. Defendant Capital Equity contends that it had no dealings with the Dymas Fund or its general partner, TEAM. Capital Equity had no dealings or communications with the Lillards. [Doc. No. 25, Exhibit A, Stockton affidavit at ¶ 7]. Finally, Arthur Stockton attests to the fact that any actions he may have taken in connection with Plaintiffs' investments were not performed in his capacity as President of Capital Equity. *Id.* at ¶ 8.

Plaintiffs contend Capital Equity has purposefully directed numerous activities toward the state of Oklahoma, asserting that "[Capital Equity and SCMSI], along with the other defendants, bound themselves together under the direction and control of Stockton in a common enterprise aimed at bringing them investment dollars from Oklahoma from which they could derive a profit." [Doc. No. 40 at 16]. Plaintiffs argue that Oklahoma's jurisdiction over Capital Equity is justified based on the notion that a "common enterprise" existed, furthered by Arthur Stockton's contacts with Plaintiffs, which caused harm to Plaintiffs.

## 2. Defendant SCMSI's Contacts with Oklahoma

SCMSI is an Arizona corporation, its principal place of business in Phoenix, Arizona. SCMSI does not maintain offices or employees in the state of Oklahoma, nor does it pay taxes in Oklahoma, advertise or solicit business in Oklahoma, maintain phone or fax listings in Oklahoma, or conduct regular business in Oklahoma. [Doc. No. 26, Exhibit A, Stockton affidavit at ¶ 3]. Arthur Stockton is the President of SCMSI. *Id.* at ¶ 2. Defendant SCMSI contends that it did not maintain any trading accounts with Plaintiffs, did not have any contacts or agreements with Plaintiffs, did not sell any securities to Plaintiffs, and had "no dealings whatsoever" with Plaintiffs in connection with their investment in the Dymas Fund or any other investment. *Id.* at ¶ 4. SCMSI asserts that its sole function is to execute unsolicited, institutional block trades for one client—Stockton Trust, Inc. *Id.*

SCMSI was listed in the Dymas Fund CPOM as a potential future affiliate service provider on the contingency it might provide service directly to the Dymas Fund. No such services were ever provided. *Id.* at ¶ 5. Defendants further assert the Dymas Fund listed the potential services of SCMSI because SCMSI provided institutional trading services to Stockton Trust, Inc. and, though twice removed, the Dymas Fund believed it important to disclose the potential conflict of interest. "However, to the extent any transactions by Stockton Trust, Inc. represented transactions for the Dymas Fund, they formed part of the large, institutional block trades for Stockton Trust, Inc., indistinguishable from any others." *Id.* at ¶ 5. Finally, Arthur Stockton declares that any of the actions he may have undertaken in connection with Plaintiffs' investments were not performed in his capacity as President of SCMSI. *Id.* at ¶ 6.

Plaintiffs again argue that SCMSI is part of an "inextricably intertwined" common enterprise with all other Defendants, the actions of which ultimately caused harm to Plaintiffs. Plaintiffs contend that SCMSI's involvement as one of the "Stockton entities" justifies this Court's exercise of jurisdiction over SCMSI.

Both Defendants argue that the above-listed contacts are insufficient under the due process clause of the United States Constitution to subject them to this Court's jurisdiction.

### (A) General Personal Jurisdiction

For a court to assert general jurisdiction over a nonresident defendant, the plaintiff must demonstrate the defendant has continuous and systematic contacts with the forum state. In *Soma*, the Tenth Circuit found the following factors helpful in determining whether general personal jurisdiction exists as to a non-resident corporation:

Whether the corporate defendant is:

1. engaged in business in this state;
2. licensed to do business in this state;
3. owning, leasing, or controlling property (real or personal) or assets in this state;
4. maintaining employees, offices, agents, or bank accounts in this state;
5. present in that shareholders reside in this state;
6. maintaining phone or fax listings within this state;
7. advertising or soliciting business in this state;
8. traveling to this state by way of salespersons, etc.;
9. paying taxes in this state;
10. visiting potential customers in this state;

11. recruiting employees in the state;
12. generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Soma,* 196 F.3d at 1295–96.

None of the above criteria are satisfied to enable the Court's exercise of general personal jurisdiction over Defendant Capital Equity or Defendant SCMSI. The only factor *potentially* weighing in favor of Plaintiffs' argument would be the unsubstantiated allegation that Defendants engaged in business in Oklahoma or solicited customers under the guise of a common enterprise through Arthur Stockton. However, Plaintiffs' general, conclusory allegations of such activities is insufficient to justify the exercise of general personal jurisdiction over Capital Equity or SCMSI. *See Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976); *see also Oppenheim v. Sterling,* 368 F.2d 516, 519 (10th Cir.1966). Plaintiffs provide no proof to validate their claims, which are contradicted by the sworn affidavit of Arthur Stockton. Similarly, even if Defendants solicited Plaintiffs' via the so-called "Stockton entities," general jurisdiction would still be improper because Defendants solicited only two residents. This conduct does not justify subjecting Defendants to general personal jurisdiction where Defendants' activities do not demonstrate continuous and systematic contacts with Oklahoma.

### (B) Specific Personal Jurisdiction

■ Although general personal jurisdiction over Defendants is not applicable, the Court may still exercise specific personal jurisdiction consistent with the due process clause if Defendants have purposefully directed their activities at residents of the forum, and the injuries alleged arise out of or relate to those activities. To exercise specific personal jurisdiction, a defendant's activities directed toward residents in a forum state must be such that the defendant can reasonably anticipate being haled into court in the forum state. The Supreme Court, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), reasoned:

> The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253, 78 S.Ct. 1228 (citing *Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154).

■ A plaintiff bears the burden of demonstrating that jurisdiction exists over a non-resident defendant. *See Kuenzle,* 102 F.3d at 456. Jurisdiction will not be avoided merely because the defendant never physically entered the forum state. *Burger King Corp.,* 471 U.S. at 476, 105 S.Ct. 2174. The need for physical presence is obviated by the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines. . . ." *Id.* at 476, 105 S.Ct. 2174. Also relevant is whether any nexus exists between Defendant's alleged forum-related contacts and the cause of action against Defendant. *See OMI Holdings,* 149 F.3d at 1095 (recognizing that for specific jurisdiction to exist, there must be a nexus "between Defendant's forum-related contacts and the Plaintiff's cause of action").

### (1) Specific Jurisdiction over Capital Equity

The undersigned finds that Plaintiffs have failed to demonstrate that the Northern District of Oklahoma can exercise specific jurisdiction over Defendant Capital Equity. Plaintiffs' bald and unsupported allegations do not persuade the under-

signed that Capital Equity has purposefully directed activities toward Plaintiffs, as residents of Oklahoma, such that Capital Equity could reasonably anticipate being haled into court in Oklahoma.

For purposes of establishing jurisdiction, "[o]nly the well pled facts of [the] complaint, as distinguished from mere conclusory allegations, must be accepted as true." *See Ten Mile Indus., Park v. Western Plains Serv. Corp.,* 810 F.2d 1518, 1524 (10th Cir.1987). Plaintiffs' attempt to manufacture personal jurisdiction through conclusory allegations that Capital Equity bound itself together "under the direction and control of Stockton in a common enterprise aimed at bringing [Defendants] investment dollars from Oklahoma ...." and, through the acts of Arthur Stockton, "purposefully directed numerous actions" within Oklahoma causing harm to the Plaintiffs is insufficient to establish jurisdiction. [Doc. No. 40 at 16]. Plaintiffs fail to identify or allege any "actions" that Capital Equity "purposefully directed" toward or within Oklahoma. Capital Equity notes that its name specifically appears only three times in Plaintiffs' Complaint, and never in connection with any alleged conduct directed at or occurring within Oklahoma.

Moreover, even well pled allegations in a Complaint are not automatically assumed to be true when contradicted by the affidavits from the opposing party. *See FDIC v. Oaklawn Apts.,* 959 F.2d 170, 174 (10th Cir.1992) ("well pled facts of the complaint must [only] be accepted as true if uncontroverted by the defendant's affidavits"); *see also Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1284 (9th Cir.1977) ("we may not assume the truth of allegations in a pleading which are contradicted by affidavit."). Plaintiffs' "common enterprise" allegations are contradicted by the affidavit of Arthur Stockton, which stated that Capital Equity had

nothing to do with the Dymas Fund or with TEAM, and had "no dealings or communications of any kind" with the Lillards. [Doc. No. 25, Exhibit A, at ¶ 7]. Additionally, Stockton declared that "none of the actions [he] may have undertaken in connection with investments by Richard and Lucinda Lillard, were performed in [his] capacity as President of Capital Equity." *Id.* at ¶ 8.

Finally, Plaintiffs' attempt to establish jurisdiction over Capital Equity in this Court by noting that Capital Equity is a plaintiff in an indemnity action filed against the Lillards in Nevada as evidence of a relationship between Capital Equity and the Lillards is unpersuasive. [Doc. No. 40 at 16]. Capital Equity contends that it

> filed suit against the Lillards solely as a third-party beneficiary of a contract between the Lillards and TEAM, in which the Lillards agreed to indemnify TEAM, the Dymas Fund and their "affiliates" (including Capital Equity) in the event that plaintiffs made false representations or warranties in the Subscription Agreement for the Dymas Fund.

[Doc. No. 44 at 5 n. 1]. The undersigned agrees that Plaintiffs' argument is a red herring which fails to assist in the determination of the extent of Defendant Capital Equity's purposefully directed activities toward Oklahoma.

For the reasons discussed above, the undersigned finds that Defendant Capital Equity is not subject to specific personal jurisdiction in the forum state of Oklahoma. Because the undersigned concludes that Defendant Capital Equity has not purposefully established minimum contacts in Oklahoma, an analysis of the contacts in light of various factors to determine if the exercise of specific personal jurisdiction comports with traditional notions of fair play and substantial justice need not be undertaken.

### (2) Specific Jurisdiction over SCMSI

The undersigned further finds that Plaintiffs have failed to satisfy their burden of establishing specific personal jurisdiction over Defendant SCMSI, a non-resident corporation, for many of the reasons set forth in the Capital Equity analysis. First, Plaintiffs' conclusory allegations that SCMSI comprised part of a "common enterprise" causing harm to Plaintiffs is unsupported in factual allegations or affidavits and, in fact, contradicted by the affidavit of Arthur Stockton. As previously discussed, SCMSI is an Arizona corporation, its principal place of business in Phoenix, Arizona, which executes large, unsolicited block trades on behalf of its only client Stockton Trust. [Doc. 26, Exhibit A, at ¶¶ 3–4]. Moreover, Arthur Stockton declared that none of the actions taken in connection with the Lillards' investments were performed in his capacity as President of SCMSI. *Id.* at ¶ 6.

Second, Plaintiffs fail to identify acts that Defendant SCMSI purposefully directed toward them as Oklahoma residents or conduct on the part of SCMSI giving rise to Plaintiffs' claims. SCMSI was listed in the CPOM for the Dymas Fund as a potential affiliate service provider, whose services were never utilized. SCMSI was also listed to disclose any potential conflict of interest in light of the institutional trading services it provided to Stockton Trust. *Id.* at ¶ 5. SCMSI did not maintain any individual investors accounts. *Id.* at ¶ 4.

Third, for substantially the same reasons discussed in the Capital Equity analysis, the fact that Defendant SCMSI has filed suit against Plaintiffs in Arizona as a third-party beneficiary of a contract between Plaintiffs and TEAM wherein Plaintiffs agreed to indemnify TEAM, the Dymas Fund, and their "affiliates" in the event Plaintiffs made false representations or warranties in the Dymas Fund Subscription Agreement is not, in itself, sufficient to establish a relationship between SCMSI and Plaintiffs. Thus, the conclusory and controverted allegations proffered by Plaintiffs in an attempt to justify this Court's exercise of specific personal jurisdiction over Defendant SCMSI are unpersuasive because they fail to establish how SCMSI, through its conduct, purposefully availed itself to the privilege of doing business in Oklahoma or engaged in actions giving rise to Plaintiffs' claims.

The undersigned finds that Plaintiffs have failed to satisfy their burden that Defendant SCMSI is subject to specific personal jurisdiction in the Northern District of Oklahoma. Accordingly, the reasonableness and traditional notions of fair play and substantial justice analysis in exercising specific jurisdiction over Defendant SCMSI need not be conducted.

For the reasons set forth above, the undersigned recommends that the District Court **GRANT** Defendant Capital Equity and Defendant SCMSI's Motions to Dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). [Doc. Nos. 25–1, 26–1]. However, due to the nature of this Report and Recommendation, and if the District Court should choose not to adopt the undersigned's recommendation, Defendants Capital Equity and SCMSI will be included as part of the undersigned's analysis of the remaining Defendants' motions to dismiss on other dispositive grounds.

## IV. OTHER DISPOSITIVE ISSUES

### A. Failure to State a Claim under the 1934 Act for Unlawful Misrepresentations or Omissions in Violation of Section 10(b)/Rule 10b–5

#### 1. Overview

Under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),

any person is prohibited from using or employing a "manipulative or deceptive device" in connection with the sale of a security. More specifically, Section 10(b) of the 1934 Act provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–

To use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (hereinafter " § 10(b) of the 1934 Act" or " § 10(b)").

Pursuant to the authority vested in it by § 10(b) of the 1934 Act, the Securities and Exchange Commission ("SEC") has promulgated Rule 10b–5, which provides as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (hereinafter "SEC Rule 10b–5" or "Rule 10b–5").

■■■ **Elements**[3]—A plaintiff must plead and prove the following elements to recover under § 10(b) of the 1934 Act and SEC Rule 10b–5:

(1) That the defendant made an untrue statement of material fact, or failed to state a material fact;

(2) That the conduct occurred in connection with the purchase or sale of a security;

(3) That the defendant made the statement or omission with scienter (*i.e.*, knowingly or recklessly); and

(4) That the plaintiff justifiably relied on the misrepresentation or omission and sustained damages as a proximate result of the misrepresentation or omission.

*Anixter v. Home–Stake Production Co.*, 77 F.3d 1215, 1225 (10th Cir.1996); *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000).

Plaintiffs allege that eleven (11) misrepresentations and material omissions were made by Defendants in violation of § 10(b) and Rule 10b–5. [Complaint at Count III, ¶¶ 35–37]. Defendants assert that Plaintiffs fail to identify with specificity which Defendant made the alleged misrepresentation or omission, and cite the following reasons supporting their contention that

---

**3.** Neither § 10(b) nor Rule 10b–5 provide an express civil remedy for their violation. Nevertheless, the United States Supreme Court has held that there is an implied private right of action under Rule 10b–5. *See Superinten-* *dent of Ins. v. Bankers Life & Cas., Co.*, 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *see also Affiliated Ute Citizens v. United States*, 406 U.S. 128, 150–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

Plaintiffs' allegations are insufficient to state a cause of action under § 10(b) and Rule 10b–5: (1) Plaintiffs fail to meet the pleading standards under Fed.R.Civ.P. 9(b) and the PSLRA; (2) Plaintiffs have failed to plead facts demonstrating that Defendants acted with the requisite state of mind (scienter); and (3) Plaintiffs fail to allege loss causation.

### 2. Failure to Satisfy Fed.R.Civ.P. 9(b) Standards: Failure to Plead Fraud with Particularity under Rule 9(b) and the PSLRA

All claims alleging fraud must be pled with particularity pursuant to Fed.R.Civ.P. 9(b). It follows, therefore, that claims alleging a violation of Section 10(b) of the 1934 Act and SEC Rule 10b–5 must also be pled with particularity because they are based in fraud. *See Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1010 (10th Cir.1986) (the particularity requirement of Rule 9(b) is applicable in securities fraud cases); *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir.1997); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992).

Rule 9(b) requires a complaint to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *See Schwartz,* 124 F.3d at 1252 (citing *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir. 1991)). Similarly, where fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as "by the defendants" are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth. *See Bruns v. Ledbetter,* 583 F.Supp. 1050, 1052 (S.D.Cal.1984).

Congress reinforced Rule 9(b)'s pleading requirements with the 1995 enactment of the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA is designed to curb perceived abuses of federal securities litigation. *See In re Sprint Corp. Securities Litigation,* 232 F.Supp.2d 1193, 1213–14 (D.Kan.2002) (citing *Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1258 (10th Cir.2001)). "The PSLRA thus mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular." *Id.*

In terms of allegations of material misrepresentations and omissions, the PSLRA requires:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant–
>
> > (A) made an untrue statement of a material fact; or
> >
> > (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> *the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.*

*See* 15 U.S.C. § 78u–4(b) (emphasis added).

Defendants assert that Plaintiffs have failed to satisfy the pleading requirements under Rule 9(b) and the PSLRA in their failure to plead the alleged misrepresentations and omissions with particularity. Defendants discuss each of Plaintiffs' allegations in turn, citing deficiencies in particularity of Plaintiffs' allegations, which Plaintiffs submit were responsible for fraudulently inducing them to invest in the securities. Defendants also highlight the cautionary disclosures provided to Plain-

tiffs in the CPOM and Subscription Agreement.

### (i) Failure to disclose information regarding fees to be charged [sic] The Dymas Fund by Stockton affiliates [Complaint at Count III ¶ 35(a) ]

██ Plaintiffs' first allegation of unlawful misrepresentations or omissions centers on the fees to be charged the Dymas Fund by "Stockton affiliates." Defendants note that Plaintiffs fail to identify what information concerning the fees was not provided. Moreover, Plaintiffs do not relate how the unidentified information is material to their cause of action under § 10(b)/Rule 10b–5. Plaintiffs fail to specify *which* of the Defendants omitted information on fees to be charged. It is unclear who the so-called "Stockton affiliates" encompasses. The undersigned agrees that this conclusory allegation by Plaintiffs fails to satisfy the heightened pleading requirement of particularity under Rule 9(b) and the PSLRA. Not only does it fail to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof," but it also couches the alleged fraud in blanket allegations insufficient under Rule 9(b). *See Schwartz,* 124 F.3d at 1252 (citing *Lawrence Nat'l Bank v. Edmonds,* 924 F.2d 176, 180 (10th Cir.1991)); *see also Bruns,* 583 F.Supp. at 1052 (noting that the specifics of the alleged fraudulent activity of each defendant must be set forth).

To further discount Plaintiffs' allegation of unlawful misrepresentations or omissions, Defendants point to the disclosures provided in the CPOM and Subscription Agreement regarding administrative fees to be charged to the Dymas Fund and by whom. [Doc. No. 4, CPOM, Exhibit E at 5–6, 21–22; Partnership Agreement, Exhibit F at 6–7]. The CPOM notes that

TEAM, the general partner, was entitled to a share of profits according to the formula detailed in the Dymas Fund Partnership Agreement. [Doc. No. 4, CPOM, Exhibit E at 4, 21–22, 26; Partnership Agreement, Exhibit F at 11–17].

Based on Plaintiffs' failure to allege a misleading material statement or omission concerning fees to be charged to the Dymas Fund with particularity, and Defendants' citation to several disclosures in materials provided to Plaintiffs, the undersigned finds that Plaintiffs' first allegation fails to satisfy the pleading standard of particularity under Rule 9(b) and the PSLRA and recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(a) of the Complaint.

### (ii) Failure to provide information regarding administrative fees and costs [Complaint at ¶ 35(b) ]

██ Plaintiffs' second allegation involves false and misleading statements or omissions concerning information on administrative costs and fees. The undersigned finds that this general, conclusory allegation is insufficient under Rule 9(b)'s particularity requirement in that it too fails to specify the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof. *See Schwartz,* 124 F.3d at 1252 (citing *Lawrence Nat'l Bank,* 924 F.2d at 180); *see also Bruns,* 583 F.Supp. at 1052.

First, this allegation fails to identify what "information" was lacking. Second, Plaintiffs do not distinguish among the Defendants in terms of which, if any, withheld or failed to provide this information. Third, no date as to the alleged omission is specified. Finally, Plaintiffs fail to identify how this omission is material or misleading. Defendants again cite to the disclo-

**1104**

sures in the CPOM and the Partnership Agreement, which provide information on administrative fees and costs. [Doc. No. 4, CPOM, Exhibit E at 5–6, 21–22; Partnership Agreement, Exhibit F at 6–7].

Therefore, the undersigned finds that this conclusory allegation is insufficient under Rule 9(b) and the PSLRA and recommends that the District Court GRANT Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(b).

**(iii) Failure to disclose material information regarding the general partner, TEAM, including its financial status, extent of capitalization, and capital contributions to The Dymas Fund [Complaint at ¶ 35(c) ]**

▉ Plaintiffs' third allegation of a material omission focuses on Defendants' failure to disclose "material information" concerning TEAM, the general partner of the Dymas Fund. However, Plaintiffs' fail to specify with particularity what information regarding TEAM and its financial status was not provided. Moreover, Plaintiffs fail to discuss why this information was material or the consequences of this omission. Again, Plaintiffs omit to distinguish among or specify which of the Defendants is responsible for this material omission, or when the omission occurred in relation to the transaction. Finally, Defendants point out that this information was provided to Plaintiffs in the CPOM and Partnership Agreement, documents which Plaintiffs signed after reviewing them. [Doc. No. 4, CPOM, Exhibit E at 2, 11, 15, 18–20; Partnership Agreement, Exhibit F at 4–6].

The undersigned finds that Plaintiffs have failed to plead this allegation with the particularity envisioned in and required by Rule 9(b) and the PSLRA, and recommends that the District Court GRANT Defendants' motions to dismiss the allegation in Count III ¶ 35(c).

**(iv) Failure to disclose material information regarding the ownership, control, and management of the general partner, TEAM, the Dymas Fund, L.P., Stockton Trust, Inc., Stockton Capital Management Securities, Inc., Capital Equity Resources Management Company, Inc., and Dymas Partners, L.P. [Complaint at ¶ 35(d) ]**

Plaintiffs' fourth allegation fails to satisfy the heightened pleading standard under Rule 9(b) and the PSLRA for substantially the same reasons discussed above. Plaintiffs do not identify what information was not disclosed by Defendants, when and where the non-disclosure occurred, or even how the information omitted was material. Defendants cite the CPOM as evidence that this information was revealed and detailed the involvement of TEAM, Capital Equity, SCMSI, Stockton Trust, and Stockton in relation to the Dymas Fund. [Doc. No. 4, CPOM, Exhibit E at 5, 11, 15, 18–20].

Accordingly, the undersigned finds that this allegation is insufficient under the pleading requirements and recommends that the District Court GRANT Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(d).

**(v) Failure to disclose an intent to invest in unregistered securities, namely Dymas Partners, L.P. [Complaint at ¶ 35(e) ]**

Plaintiffs' fifth allegation involves a failure to disclose an intent on the part of Defendants to invest in unregistered securities, namely Dymas Partners, L.P. It is worth noting that Plaintiffs later admit that no such entity by the name of "Dymas Partners, L.P." exists. Regardless, Plaintiffs' allegation again falls short of the particularity and specificity required under Rule 9(b) and the PSLRA. No informa-

tion is alleged as to who failed to disclose this information, when the non-disclosure occurred, or even why such an omission is material. Moreover, the CPOM and Subscription Agreement disclosed that the limited partnership interests in the Dymas Fund that Plaintiffs purchased were not registered. Defendants note that Plaintiffs represented in the Subscription Agreement their knowledge that the Dymas Fund was unregistered and that Plaintiffs were "accredited investors," which imputes actual or constructive knowledge to the Plaintiffs. [Doc. No. 4, Subscription Agreement, Exhibit D at 2–4].

The undersigned finds that Plaintiffs' fifth allegation lacks the sufficiency required under the pleading requirements, and recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(e).

### (vi) Failure to disclose intent to invest in securities of entities related to or affiliated with the general partner and controlling persons [Complaint at ¶ 35(f) ]

Plaintiffs' sixth allegation of a material omission fails to state with particularity which of the Defendants failed to disclose an intent to invest in securities of entities related to or affiliated with the general partner and controlling persons. No information as to the time or place of the omission is alleged; nor do Plaintiffs state why or how this information is material. Defendants note that Plaintiffs fail to identify which securities they are referring to in this allegation. Moreover, Defendants cite the CPOM as evidence of full disclosure of the relationship between the Dymas Fund, TEAM, and Stockton trust. [Doc. No. 4, CPOM, Exhibit E at 2, 11, 18–22].

The undersigned finds that this general and conclusory allegation falls short of satisfying the pleading standard under Rule 9(b) and the PSLRA, and recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(f).

### (vii) Failure to disclose the investment structure with relation to limited partnership interests [Complaint at ¶ 35(g) ]

██ Plaintiffs' seventh allegation of non-disclosure lacks specificity as to which facts concerning the investment structure were not provided by Defendants, which of the Defendants failed to provide the information, and when, where, and how it is material. The CPOM and the Partnership Agreement disclose the investment into the Dymas Fund and its structure. [Doc. No. 4, CPOM, Exhibit E; Partnership Agreement, Exhibit F].

Accordingly, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' vague allegation in Count III ¶ 35(g).

### (viii) Failure to disclose the true investing track record of key management personnel, namely Defendant Arthur Stockton [Complaint at ¶ 35(h) ]

Plaintiffs' eighth allegation lacks particularity as to the meaning of "true investing track record" and what information Defendants failed to provide. Again, no distinction is made in terms of which Defendant made such an omission or why this omission is material. The date and place of the omission are not alleged by Plaintiffs. Therefore, the undersigned recommends that the District Court GRANT Defen-

dants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(h).

### (ix) Misrepresentations of projected returns [Complaint at ¶ 35(i) ]

Plaintiffs' ninth allegation focuses on "misrepresentations of projected returns." This vague and conclusory allegation fails to plead with particularity the content of the alleged misrepresentations and the time and place they occurred. Such a broad and ambiguous allegation cannot satisfy Rule 9(b)'s particularity requirement or the PSLRA.

Therefore, the undersigned recommends that the District Court GRANT Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(i).

### (x) Misrepresentations of investment strategies and objectives [Complaint at ¶ 35(j) ]

Plaintiffs' tenth allegation fails to satisfy the pleading standards for substantially the same reasons discussed above. No identification is made of the content of the "misrepresentations" or the time, place, materiality, or identity of the Defendant who misrepresented investment strategies and objectives. The phrase "investment strategies and objectives" is ambiguous. Moreover, the CPOM states the objectives of the Dymas Fund in detail, discusses Investment strategies employed, and states that certain risks exist and no return could be guaranteed. [Doc. No. 4, CPOM, Exhibit E at 5, 10–17].

Accordingly, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' allegation in Count III ¶ 35(j) for failure to comply with the pleading requirements in Rule 9(b) and the PSLRA.

### (xi) As part and parcel of Defendants' fraud upon Plaintiffs, Defendants caused to be purchased on Plaintiffs' behalf, interest in Dymas Partners, L.P., an entity owned or controlled by Defendants over a period beginning in or about May 2000 and continuing through April 2001. *Defendants failed to disclose to Plaintiffs the extent of Defendants' ownership and control of Dymas Partners, L.P., the state of organization, the type of business, the financial condition, or any of the particulars of that entity nor did Defendants disclose that the security was unregistered and illiquid.* [Complaint at Count III, ¶ 37]

Plaintiffs' eleventh, and final, allegation claims that Defendants made a material omission in failing to disclose the extent of Defendants' ownership and control of Dymas Partners, L.P. and particulars regarding that entity, and that Defendants failed to disclose that the security was unregistered and illiquid. Plaintiffs failed to specify the information as to the financial condition, ownership and control, and the "particulars" not provided by Defendants. Again, Plaintiffs do not attempt to identify which Defendant made such an omission or why the omission was material. Moreover, Plaintiffs admitted that no such entity by the name of Dymas Partners, L.P. exists. Nonetheless, Defendants note that the CPOM, Subscription Agreement, and Partnership Agreement fully disclosed those who owned and controlled the Dymas Fund, its purpose, the fact that the Dymas Fund was a limited partnership based in Nevada, and other relevant information.

The undersigned finds that Plaintiffs' allegation in Count III ¶ 37 fails to meet the particularity required under Fed. R.Civ.P. 9(b) and the PSLRA, and recom-

mends that the District Court **GRANT** Defendants' motions to dismiss this allegation.

### 3. Failure to Plead Facts Showing Defendants Acted with the Requisite State of Mind (Scienter) Pursuant to the PSLRA

Defendants further assert that Plaintiffs' claim for unlawful misrepresentations or omissions under the 1934 Act must be dismissed because Plaintiffs have failed to plead facts showing that Defendants acted with the requisite state of mind. With the 1995 passage of the PSLRA, Congress mandated a "more stringent pleading standard for securities fraud actions in general, and for scienter allegations in general." *See In re Sprint Corp. Securities Litigation*, 232 F.Supp.2d 1193, 1213–14 (D.Kan. 2002). Prior to the adoption of the PSLRA, an inference of fraudulent intent could be established by: "(1) alleging facts constituting strong circumstantial evidence of 'conscious misbehavior or recklessness,' or (2) alleging that Defendants had the motive and opportunity to commit securities fraud." *See Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1259 (10th Cir.2001). However, the PSLRA heightened the pleading standard in order to curb the trend in securities fraud cases to "abuse ... the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle." *Id.* at 1259.

Accordingly, the PSLRA requires a plaintiff to set forth particular facts supporting allegations that a defendant acted with a particular state of mind.

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with partic-*

*ularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b) (emphasis added). Any complaint failing to conform with the pleading requirements of the PSLRA "shall" be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A). Presently, "the appropriate level of scienter in securities fraud cases is 'a mental state embracing intent to deceive, manipulate or defraud,' which includes recklessness." *Fleming Cos.*, 264 F.3d at 1259; *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Whereas intentional misconduct is more readily identifiable, reckless conduct has proven more difficult to define. The Tenth Circuit has defined recklessness as "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 1260. The Tenth Circuit noted that courts have exercised caution in imposing liability for securities fraud based upon reckless conduct, cautioning against the propriety of allowing plaintiffs to proceed with allegations of "fraud by hindsight." *Id.* In fact, to establish scienter by recklessness, a plaintiff must demonstrate that the defendant had knowledge of a fact that was "so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors." *Id.* at 1261. "[R]ecklessness in securities fraud is an untidy, case-by-case concept." *Id.* at 1263.

The Tenth Circuit has adopted a "middle ground approach" to the pre-PSLRA alternate method of pleading regarding motive and opportunity in securities fraud cases. *See Fleming Cos.*, 264 F.3d at 1261–62. In terms of pleading

scienter through a showing of a defendant's motive and opportunity to commit securities fraud, the rule is that "motive and opportunity pleadings are relevant to a finding of scienter, but ... do not constitute a separate, alternate method of pleading scienter." *Id.* at 1261. Rather, "allegations of motive and opportunity may be important to that totality but are typically not sufficient in themselves to establish a 'strong inference' of scienter." *Id.* at 1261–62. In sum,

> [w]hen reviewing a plaintiff's allegations of scienter under the PSLRA, a court should therefore examine the plaintiff's allegations in their entirety, without regard to whether those allegations fall into defined, formalistic categories such as "motive and opportunity," and determine whether the plaintiff's allegations, taken as a whole, give rise to a strong inference of scienter.

*Id.* at 1263.

■ In the instant case, Plaintiffs allege in their Complaint that Defendants "intentionally or recklessly misled" them regarding the nature and attributes of the securities. [Complaint, Count III at ¶ 39]. Defendants contend that this conclusory, blanket allegation is unsupported by facts and should be dismissed for failure to satisfy the burden of pleading required by the PSLRA. The undersigned agrees and concludes that Plaintiffs, through their conclusory allegations, have not sufficiently and with particularity pled facts giving rise to a "strong inference" that Defendants engaged in knowing or reckless conduct in allegedly misrepresenting or failing to disclose material information regarding the securities.

Plaintiffs have failed to sufficiently plead facts giving rise to a strong inference that Defendants acted with a mental state embracing intent to deceive, manipulate, or defraud Plaintiffs. No factual substantiation has been provided or pled to demonstrate intentional and deliberate illegal activity on the part of Defendants. Plaintiffs failed to distinguish among any of the Defendants in attributing scienter to each. Plaintiffs' allegations have not been pled with particularity as required under Rule 9(b) and the PSLRA, which further precludes a strong inference of intent to defraud by Defendants.

■ Similarly, the undersigned concludes that Plaintiffs' pleadings do not warrant a strong inference that Defendants acted recklessly by evidencing an extreme departure from the standards of ordinary care. Plaintiffs' Complaint is devoid of substantiation that Defendants knew of any non-disclosures so obviously material that Defendants were aware that they would be considered material and would mislead Plaintiffs, as investors. *Fleming Cos.,* 264 F.3d at 1258. Plaintiffs submit only general allegations referring to the mailing out of the CPOM and Limited Partnership Agreement.

Finally, even considering motive and opportunity in the mix of factors for a recklessness and scienter analysis, Plaintiffs' allegations fall far short of that required by the PSLRA. Plaintiffs never distinguish among the Defendants to specify the motive and opportunity each might have used for its benefit. Moreover, Plaintiffs fail to specifically identify how the alleged misrepresentations and omissions were material or misleading. Therefore, even assuming the Defendants had some motive and opportunity, this would only constitute a factor relevant to the totality and is insufficient in itself to establish a strong inference of scienter.

The undersigned finds, upon a review of the totality of Plaintiffs' pleadings, that Plaintiffs have failed to plead facts giving rise to a strong inference of scienter on the part of Defendants to deceive, manipulate, or defraud Plaintiffs, or that Defendants

had knowledge of a fact so obviously material that Defendants must have been aware of its materiality and that its non-disclosure would mislead investors such as Plaintiffs. Plaintiffs offer only conclusory, blanket allegations, which are precisely the type of assertions of liability that Congress contemplated curbing in its 1995 enactment of the PSLRA. *See Fleming Cos.,* 264 F.3d at 1264. The Act requires that Plaintiffs

> specify each statement alleged to have been misleading, the reason ... why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed.

15 U.S.C. § 78u–4(b)(1). Any complaint failing to conform with the pleading requirements of the PSLRA "shall" be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A). Accordingly, the undersigned recommends, pursuant to Fed.R.Civ.P. 12(b)(6), that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' allegations of misrepresentations or omissions under the 1934 Act based on a failure to plead facts sufficient to demonstrate that Defendants acted with the requisite state of mind.

#### 4. No Allegation of Loss Causation

Defendants contend that Plaintiffs' federal securities fraud claim must fail because Plaintiffs have not alleged loss causation in addition to transaction (but-for) causation. In a securities fraud case, a plaintiff must demonstrate loss causation. *See In re Sprint Corp. Securities Litigation,* 232 F.Supp.2d 1193, 1228 (D.Kan.2002). "To show loss causation, plaintiffs must set forth how 'the misrepresentation touches upon the reasons for the investment's decline in value.' " *Id.* More specifically, Plaintiffs must plead that Defendants' material misrepresentations or omissions actually caused the injury of which Plaintiffs complain. *Id.* The rationale of the requirement of loss causation is the notion that "a defendant should only be held liable for the foreseeable consequences of the defendant's actions." *Id.*

In the instant case, Plaintiffs must show that the alleged misrepresentations and omissions by Defendants caused the decline in value of the Dymas Fund, which Plaintiffs seek to recover as damages. *See* 15 U.S.C. § 78u–4(b)(4); *see also The Ambassador Hotel Co., Ltd. v. Wei–Chuan Investment,* 189 F.3d 1017, 1027 (9th Cir. 1999). However, as analyzed above, Plaintiffs' general, conclusory allegations are insufficient because they fail to satisfy the particularity requirement under Rule 9(b) and the PSLRA in addition to falling short of demonstrating a "strong inference" of scienter on the part of Defendants. Plaintiffs have failed to show that any of the alleged misrepresentations or omissions by Defendants actually caused Plaintiffs' investment into the Dymas Fund to decline in value, as compared to a decline in value triggered by the bear market in which several investors sustained a diminution in the value of their investments.

Accordingly, Plaintiffs have failed to adequately allege a claim for securities fraud under the 1934 Act. The undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' federal securities fraud claim because it does not allege misrepresentations or omissions with particularity required under Rule 9(b) and the PSLRA; fails to establish a "strong inference" of scienter on the part of Defendants; fails to adequately allege loss causation; and, based on Plaintiffs' knowledge attained in a review of the abundant disclosures in the CPOM, Subscription Agreement, and Partnership Agreement, fails to demonstrate justifiable reliance or that Defendants acted with fraudulent intent or in a reckless manner.

## B. STATE LAW FRAUD CLAIMS INSUFFI-CIENT UNDER FED. R. CIV. P. 9(B)

Plaintiffs have additionally asserted claims under state law for misrepresentations and omissions in violation of 71 Okla. Stat. § 408(a)(2), actual fraud, and constructive fraud. [Complaint at Counts IV, V, VI]. Defendants move to dismiss these claims on the ground that they are based on the same allegations of misrepresentations and omissions previously discussed and analyzed in Section VI(A), *supra,* regarding Plaintiffs' allegations in Count III ¶¶ 35 and 37. The undersigned finds that Plaintiffs' claims of securities fraud in violation of 71 Okla. Stat. § 408(a)(2), actual fraud, and constructive fraud lack the particularity required under Fed.R.Civ.P. 9(b), and recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' state law securities fraud claims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### 1. Allegation of misrepresentations and omissions in violation of 71 Okla. Stat. § 408(A)(2) [Complaint at Count IV ¶¶ 41–42]

In analyzing a claim for securities fraud under 71 Okla. Stat. § 408(a)(2), it is necessary to review the Oklahoma Securities Act.[4] Section 101 of the Oklahoma Securities Act provides as follows:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading,

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Section 101 is the Oklahoma corollary to § 10(b) of the 1934 federal Act and SEC Rule 10b–5. *See* Frederic Dorwart and David W. Holden, *An Overview of the Oklahoma Securities Act,* 25 Okla. L.Rev. 184, 185–86 (1972) (hereinafter *An Overview*). The Oklahoma Securities Act does not, however, provide a private cause of action for violations of § 101. Civil liability may only be imposed as provided in § 408 of the Oklahoma Securities Act. 71 Okla. Stat. § 408(k).

 Section 408(a)(2)(A) of the Oklahoma Securities Act provides as follows:

Any person who:

offers or sells or purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the other party not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable:

in the case of an offer or sale of a security, to the person buying the secu-

---

4. The following provisions of the Oklahoma Securities Act were adopted from the American Law Institute's 1956 Uniform Securities Act, as amended in 1958. The Uniform Securities Act has been adopted by 33 other states, Puerto Rico and the District of Columbia. *See* Uniform Securities Act, 7B U.L.A. § 101, Reference. The Uniform Act was substantially revised in 1985, and amended again in 1988.

rity from him, who may sue either at law or in equity. . . .

71 Okla. Stat. § 408(a)(2)(A).[5]

■ Plaintiffs must plead and prove the following elements to recover under § 408(a)(2)(A) of the Oklahoma Securities Act:

(1) That the plaintiff purchased a security from the defendant;

(2) That the defendant made an untrue statement of material fact or omitted to state a material fact necessary to make the statements made not misleading; and

(3) That the plaintiff was not aware of the untruth or omission at the time he purchased the security from defendant.

*Sullivan Engine Works,* 910 P.2d at 1056 n. 1; *MidAmerica,* 886 F.2d at 1249.[6]

■ As previously discussed in Section VI(A), *supra,* Plaintiffs' eleven (11) allegations of misrepresentations or omissions by the Defendants fail to satisfy the heightened pleading requirement of particularity under Fed.R.Civ.P. 9(b) and the PSLRA and, as such, "shall" be dismissed. *See* 15 U.S.C. § 78u–4(b)(3)(A). Plaintiffs'

Complaint fails to distinguish among any of the Defendants in assigning responsibility for wrongdoing. The blanket and conclusory allegations lack specificity as to the time, date, place, facts, and materiality of the allegations. Plaintiffs similarly fail to allege facts demonstrating justifiable reliance on their part for their fraud claims. Because Plaintiffs' state securities fraud claim is based in fraud, Rule 9(b) applies and requires more particularity than Plaintiffs have provided in their Complaint. *See Gay v. Akin,* 766 P.2d 985, 990 (Okla. 1988); *see also* 12 Okla. Stat. ¶ 2009(B) (2001). Therefore, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' claim for securities fraud under state law.

**2. Actual Fraud [Complaint at Count V]**

■ Plaintiffs further assert that Defendants' actions constituted actual fraud. The basic elements of common law fraud and deceit are identical under Oklahoma law. *See, e.g.,* 15 Okla. Stat. § 58; 76 Okla. Stat. § 3; OUJI 2d, Chapter 18 (providing identical jury instructions under Oklahoma law for fraud and deceit).[7] *See*

---

5. Corollary to § 12(a)(2) of the 1933 Act— Section 408(a)(2)(A) of the Oklahoma Securities Act is the Oklahoma corollary to § 12(a)(2) of the 1933 federal Act. *South Western Oklahoma Development Authority v. Sullivan Engine Works,* 910 P.2d 1052, 1058–59 (Okla.1996); *MidAmerica Fed. Sav. and Loan Ass'n v. Shearson/American Exp., Inc.,* 886 F.2d 1249, 1255 n. 3 (10th Cir.1989). One major difference exists, however. Section 408(a)(2)(A), unlike § 12(a)(2), does not require the untruth or omission be in a "prospectus or oral communication." Liability under § 408(a)(2)(A) will attach to any material untruth or omission regardless of its means of transmission.

6. Buyer's Reliance and Seller's Scienter Not Required—Unlike a § 10(b) claim, but like a § 12(a)(2) claim, § 408(a)(2)(A) does not require the plaintiff to allege or prove reliance

or the defendant's scienter. Like § 12(a)(2), § 408(a)(2)(A) gives the defendant an affirmative defense pursuant to which the defendant must prove that he did not know, and could not have known in the exercise of reasonable care, that his statements were false or misleading. *See Buford White Lumber Co. Profit Sharing and Savings Plan & Trust v. Octagon Properties, Ltd.,* 740 F.Supp. 1553, 1569 n. 7 (W.D.Okla.1989).

7. Oklahoma's deceit statutes provide as follows:

> One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

76 Okla. Stat. § 2.

A deceit, within the meaning of [76 Okla. Stat. § 2], is either:

also *Cooper v. Parker–Hughey*, 894 P.2d 1096, 1100 (Okla.1995); *Nutt v. Carson*, 340 P.2d 260, 263 (Okla.1959) (both recognizing the tort of fraud and deceit as synonymous). Plaintiffs must plead and prove the following elements to recover under the tort of fraud:

(1) That the defendant made a material representation;

(2) That the representation was false;

(3) That defendant made the representation when he knew the representation was false, or made the representation as a positive assertion recklessly, without any knowledge of its truth;

(4) That defendant made the representation with the intention that it should be acted upon by plaintiff;

(5) That plaintiff acted in reliance on the representation; and

(6) That plaintiff suffered injury as a result of the representation.

*See* OUJI 2d § 18.1; *Whitson v. Oklahoma Farmers Union Mut. Ins. Co.*, 889 P.2d 285, 287 (Okla.1995); *McCain v. Combined Communications Corp.*, 975 P.2d 865, 867 (Okla.1998).

The undersigned previously found that Plaintiffs failed to allege with particularity any misrepresentations or omissions by Defendants which have caused them harm. Because Rule 9(b) requires particularity in pleading fraud, the undersigned recommends that the District Court GRANT Defendants' motions to dismiss Plaintiffs' claim for actual fraud.

### 3. Constructive Fraud [Complaint at Count VI]

 Plaintiffs have also alleged that Defendants committed constructive fraud on Plaintiffs.

Fraud, a generic term with multiple meanings is divided into actual fraud and constructive fraud. Actual fraud is the intentional misrepresentation or concealment of a material fact which substantially affects another person. Constructive fraud, a breach of either a legal or equitable duty, does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of purpose. It may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice.

*See Patel v. OMH Medical Center, Inc.*, 987 P.2d 1185, 1199 (Okla.1999) (footnotes omitted).[8]

---

1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.
2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.
3. The suppression of a fact by one who is bound to disclose it, or who gives Information of other facts which are likely to mislead for want of communication of that fact; or,
4. A promise, made without any intention of performing.

76 Okla. Stat. § 3.

In connection with the execution of contracts, Oklahoma defines actual fraud as follows:

Actual fraud ... consists in any of the following acts, committed by a party to the contract, or with his connivance, with in-

tent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.
2. The positive assertion in a manner not warranted by the Information of the person making it, of that which is not true, though he believe it to be true.
3. The suppression of that which is true, by one having knowledge or belief of the fact.
4. A promise made without any intention of performing it; or
5. Any other act fitted to deceive.

15 Okla. Stat. § 58.

8. In its law of contracts, Oklahoma has statutorily defined constructive fraud as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the

A constructive fraud does not require an intent to deceive, and liability for constructive fraud may be based on negligent or even innocent misrepresentation. Nevertheless, a constructive fraud must be based on the breach of some legal or equitable duty owed to the plaintiff. For instance, where one has a duty to speak, but remains silent, he may be guilty of constructive fraud, even if he had no intent to mislead. Thus, even an innocent misrepresentation may constitute constructive fraud where there is an underlying right to be correctly informed of the facts. Constructive fraud has the same legal consequence as actual fraud. *Patel,* 987 P.2d at 1199. Plaintiffs must plead and prove the following elements to recover under the tort of constructive fraud:

(1) That the defendant owed plaintiff a duty of full disclosure. This duty could be part of a general fiduciary duty owed by the defendant to the plaintiff. This duty could also arise, even though it might not exist in the first instance, once a defendant voluntarily chooses to speak to plaintiff about a particular subject matter;

(2) That the defendant misstated a fact or failed to disclose a fact to plaintiff;

(3) That the defendant's misstatement or omission was material;

(4) That plaintiff relied on defendant's material misstatement or omission; and

(5) That plaintiff suffered damages as a result of defendant's material misstatement or omission.

*MSA Tubular Products, Inc. v. First Bank and Trust Company,* 869 F.2d 1422, 1424–25 (10th Cir.1989); *Faulkenberry v. Kansas City Southern Ry. Co.,* 602 P.2d 203, 206 n. 6 (Okla.1979); *Silver v. Slush-*

*er,* 770 P.2d 878, 882 n. 11 (Okla.1988); *Uptegraft v. Dome Petroleum Corp.,* 764 P.2d 1350 (Okla.1988); *Gentry v. American Motorist Ins. Co.,* 867 P.2d 468 (Okla. 1994); *Buford White Lumber Co. v. Octagon Properties, Ltd.,* 740 F.Supp. 1553 (W.D.Okla.1989); *Roberts Ranch Co. v. Exxon Corp.,* 43 F.Supp.2d 1252, 1259 (W.D.Okla.1997).

Plaintiffs' claim for constructive fraud is inadequate under Rule 9(b) for the same reasons discussed above for actual fraud. The claim was not pled with the particularity required for a claim of fraud. For example, Plaintiffs fail to distinguish among the Defendants in assigning responsibility for the fraud. Plaintiffs additionally fail to state with specificity the facts, circumstances, time, place, and date of the alleged misrepresentations and omissions on which they base their claims or to specify how they are material. Therefore, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' state law claim for constructive fraud.

In sum, because Plaintiffs have failed to meet their pleading burden for fraud under Fed.R.Civ.P. 9(b), the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' state law securities fraud claim under 71 Okla. Stat. § 408(a)(2) and Plaintiffs' claims of actual and constructive fraud.

### C. No PRIVATE RIGHT OF ACTION UNDER SECTION 17(A) OF THE 1933 ACT

Embedded in Count III ¶ 38 of their Complaint, Plaintiffs assert that the conduct of the Defendants constituted a violation of Section 17 of the Securities Exchange Act of 1933, 15 U.S.C. § 77q, by directly and indirectly using interstate

person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." 15 Okla. Stat. § 59.

commerce in the securities fraud. Defendants assert that Plaintiffs' claim arising under Section 17(a) of the 1933 Act should be dismissed because no private cause of action exists under Section 17(a). [Doc. No. 4 at 14]. At the hearing, Plaintiffs' counsel conceded that no private right of action exists under Section 17(a).

Defendants correctly note that the Tenth Circuit has ruled that no private cause of action exists under Section 17(a) of the 1933 Act. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330, 334 (10th Cir.1993). Therefore, to the extent that Plaintiffs assert claims against Defendants under the guise of Section 17(a), their claims must be dismissed. Accordingly, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' claims raising a private cause of action under Section 17(a) of the 1933 Act.

### D. SALE OF UNREGISTERED SECURITIES

#### 1. Failure to Plead Facts Supporting a Claim that Defendants were not Properly Exempt from Registration under the 1933 Act or Oklahoma Law

In Count II of their Complaint, Plaintiffs assert that Defendants violated both federal and state securities laws by engaging in the sale of unregistered securities. Specifically, Plaintiffs allege that the sale of unregistered securities to Plaintiffs violated Section 12(a)(1) of the Securities Act of 1933 and 71 Okla. Stat. §§ 301 and 408(a)(1).

#### *(A) Federal Securities Claims Barred by the One–Year Statute of Limitations*

■■■ Defendants contend that Plaintiffs' allegations of violations of the 1933 Act for the sale of unregistered securities are conclusory and contradicted by the offering documents, which clearly state that the securities were being offered pursuant to a reliance on a private offering exemption. Under Section 506 of Regulation D, offers and sales of securities are exempt from the registration requirements when the issuer reasonably believes there are no more than thirty-five (35) purchasers, and when each person who is not an accredited investor has the knowledge and experience in financial business matters so that he is capable of evaluating the risks. In the alternative, Defendants note that, regardless of whether the Dymas Fund interests were exempt from the registration requirements, Plaintiffs claims are barred by the one-year statute of limitations.

Plaintiffs concede that, with respect to federal registration claims, a one-year statute of limitations period exists. Under 15 U.S.C. § 77m, "[n]o action shall be maintained to enforce any liability created under section 771(a)(1) of this title, unless brought within one year after the violation upon which it is based." The one-year limitations period commences on the date of the sale of unregistered securities. *See* 15 U.S.C. § 77m; *see also Cook v. Avien, Inc.,* 573 F.2d 685, 691 (1st Cir.1978); *Temple v. Gorman,* 201 F.Supp.2d 1238, 1241 (S.D.Fla.2002) (noting that while the limitations period for a claim for misstatement under § 12(a)(2) is flexible depending on the discovery of the misstatement, a claim under § 12(a)(1) is barred unless brought within one year after the violation).

In their Complaint at ¶ 25, Plaintiffs allege that "[i]n or about May of 2000 and prior thereto," Defendants solicited Plaintiffs and caused to be purchased interests in The Dymas Fund. These interests were unregistered. The Subscription Agreement for The Dymas Fund, L.P. was signed and accepted by Plaintiffs on May 30, 2000. [Doc. No. 4, Exhibit D, Sub-

scription Instructions]. Plaintiffs' Complaint was not filed until September 10, 2001, approximately fourteen (14) months after the alleged violation. Accordingly, Plaintiffs' claims against Defendants for the sale of unregistered securities in violation of the 1933 Act are time barred because the suit was not brought within the applicable one-year statute of limitations period from the date of purchase of interests in the Dymas Fund.

However, Plaintiffs argue that, in ¶ 26 of their Complaint, they have alleged "ongoing purchases" and violations. Plaintiffs alleged that "during a period commencing in May of 2000 and continuing through April of 2001, Defendant[s] . . . cause[d] to be purchased for the Plaintiffs' accounts, interests in Dymas Partners, L.P." Plaintiffs' "ongoing purchases" argument is faulty for several reasons. First, Plaintiffs have admitted that no such entity by the name of Dymas Partners, L.P. exists. Second, Plaintiffs' claim against the Dymas Fund specifically stated that purchases of Dymas Fund interests occurred "[i]n or about May of 2000 and prior thereto." Third, based on the arguments at the hearing before the undersigned, it appears that Plaintiffs made a one-time purchase into the Dymas Fund, as limited partners, after which the *Dymas Fund* traded their money, along with money from the other limited partners, in different investments. Therefore, the relevant date for the statute of limitations is Plaintiffs' initial purchase of interests into the Dymas Fund in or about May of 2000.

Plaintiffs have failed to meet their burden of pleading that their registration claims fall within the applicable one-year statute of limitations. "The courts uniformly hold that a plaintiff must affirmatively plead compliance with Section 13 [15 U.S.C. § 77m], as it forms a substantive element of a Securities Act claim." *See In re Longhorn Securities Litigation*, 573 F.Supp. 255, 266 (W.D.Okla.1983). Accordingly, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' claim for violation of the 1933 Act for the sale of unregistered securities. However, the undersigned recommends that the dismissal be **WITHOUT PREJUDICE**, and that the District Court grant Plaintiffs **LEAVE TO AMEND** their claim, pursuant to Fed. R.Civ.P. 15(a), in order to set forth details of ongoing purchases and details specifying what unregistered securities were bought and sold, which would bring their alleged violations within the one-year statute of limitations.

### (B) State Law Claims Preempted Under NMSIA

■ Plaintiffs further allege that Defendants violated 71 Okla. Stat. §§ 301 and 408(a)(1) in the sale of unregistered securities. Under Oklahoma law, the statute of limitations is three (3) years. Therefore, no time bar applies to this claim. *See* 71 Okla. Stat. § 408(f). However, Defendants contend that Plaintiffs' state law claims are preempted by the National Market Securities Improvement Act ("NMSIA"), enacted by Congress in 1996. *See* 15 U.S.C. 77r; Pub.L. No. 104–290 (HR 3005). Defendants note that the purpose of NMSIA is "to preempt state 'Blue Sky' laws which required issuers to register many securities with state authorities prior to marketing in the state." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir.2001). The NMSIA drafters intended the Act to eliminate the costs and burdens of duplicative and unnecessary regulation by designating the federal government as exclusive regulator of national offerings of securities. *See Zuri–Invest AG v. Natwest Fin., Inc.*, 177 F.Supp.2d 189, 192 (S.D.N.Y.2001).

Defendants cite the recent case of *Temple v. Gorman*, 201 F.Supp.2d 1238 (S.D.Fla.2002), which held that NMSIA preempted Florida state regulations requiring the registration of "covered securities" offerings. Under 15 U.S.C. § 77r(b)(4)(D), a security is "covered" if sold pursuant to an exemption from registration under SEC rules or regulations issued under 15 U.S.C. § 77d(2). The securities at issue in *Temple* involved securities sold in reliance on an exemption under SEC Regulation D. The defendants maintained that the securities were "covered" because they were sold pursuant to Regulation D. The plaintiffs countered that the securities were not actually exempt because the offering failed to meet the requirements of Rule 506 of Regulation D. The *Temple* Court held that "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to Plaintiffs are federal 'covered securities' because they were sold pursuant to those rules." *Temple*, 201 F.Supp.2d at 1243–44. Thus, Defendants in the present action argue that, because interests in the Dymas Fund were sold to investors as a private offering pursuant to Regulation D and Rule 506, Plaintiffs' state law registration claim is preempted by NMSIA and should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

The undersigned is persuaded that Plaintiffs' state law registration claims are preempted by NMSIA. Defendants raised the NMSIA preemption argument for the first time in their reply brief in support of their motions to dismiss. [Doc. No. 47]. Plaintiffs failed to respond to this argument in the form of a brief. Additionally, Defendants presented this argument at the hearing, and Plaintiffs failed to rebut Defendants' assertion that the state law registration claims are preempted. Accordingly, the undersigned recommends that the District Court GRANT Defendants' motions to dismiss Plaintiffs' claims.

**E. FAILURE TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR BREACH OF A FIDUCIARY DUTY**

In Count I of their Complaint, Plaintiffs allege Defendants provided inappropriate investment advice and breached a fiduciary duty owed to Plaintiffs by virtue of their relationship. Defendants argue that Plaintiffs' claim of breach of fiduciary duty should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to sufficiently plead facts alleging a duty on the part of Defendants and failure to allege how Defendants breached their duties. The undersigned finds that Plaintiffs' have sufficiently pled facts alleging a breach of fiduciary duty on the part of their investment adviser, Arthur Stockton. However, Plaintiffs have failed to sufficiently plead facts giving rise to a breach of fiduciary duty on the part of the other Defendants, even considering the liberal pleading standard under Fed.R.Civ.P. 8(a).

In reviewing the sufficiency of a Complaint, a court must accept all well-pleaded allegations as true and view them in the light most favorable to the pleader. *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "Dismissal is proper only if it appears beyond reasonable doubt that the plaintiff can prove within such allegations no set of facts in support of the claim which would entitle him to relief." *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citing *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir.1987)). However, while all reasonable inferences that may be drawn from the allegations must be accepted, "mere conclusions characterizing pleaded facts are not, ... nor are 'unwarranted inferences drawn from the facts or footless conclusions of law predicated on them.'" *Id.* at 1390 (citations omitted).

The Federal Rules of Civil Procedure contemplate a more liberal standard of "notice pleading" for actions such as breach of fiduciary duty, as compared to the more stringent pleading requirements for actions based, for example, in fraud. Specifically, Fed.R.Civ.P. 8(a)(2) states that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief...."

The basis of Plaintiffs allegations for breach of fiduciary duty/inappropriate investment advice is that Plaintiffs' reposed complete confidence in Defendants to handle their investment accounts, which gave rise to a fiduciary duty; Defendants knew or should have known that Plaintiffs lacked sufficient investment experience to make informed decisions about the purchase and sale of securities; and that Defendants failed to properly explain to Plaintiffs how to read and interpret account statements and failed to disclose the actual risk of the transactions. Plaintiffs maintain that Defendants, by and through Plaintiffs' investment adviser Arthur Stockton, repeatedly assured Plaintiffs that no security would be held beyond a ten percent (10%) drop in market price; that preservation of capital was a primary objective; but that Plaintiffs nonetheless suffered substantial loss in value of their accounts exceeding ninety percent (90%). [Complaint at Count I ¶¶ 17–23].

The undersigned concludes that Plaintiffs have satisfied the "notice pleading" requirements under Rule 8(a)(2) regarding their breach of fiduciary duty/inappropriate investment advice claim against Defendant Arthur Stockton. Plaintiffs allege that Arthur Stockton, their investment adviser, made several assurances as to the investment strategy and safeguards of their account. Plaintiffs note an "ongoing relationship" with Defendants, which Plaintiffs allege created a fiduciary relationship based on Defendants' knowledge of Plaintiffs' lack of financial acumen. Plaintiffs assert that the breach of fiduciary duty by Defendants, acting through Stockton, resulted in harm to Plaintiffs evidenced by a substantial loss in value of their accounts. Because the "issue in resolving a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims," the undersigned finds that Plaintiffs' allegation of breach of fiduciary duty has been sufficiently pled against individual Defendant Arthur Stockton. *See Sheldon v. Vermonty*, 31 F.Supp.2d 1287, 1290 (D.Kan.1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Plaintiffs have adequately provided Defendant Stockton with notice of his alleged negligent acts. *Id.* at 1295.

However, even under the liberal pleading requirements in Rule 8(a), the undersigned does not find that Plaintiffs have adequately pled a cause of action against the remaining Defendants for breach of fiduciary duty. Plaintiffs merely assert conclusory allegations regarding Arthur Stockton's creation and control over the other Defendants and, in turn, impute knowledge and wrongdoing to all Defendants. Plaintiffs fail to plead any facts supporting an inference that the other Defendants owed a fiduciary duty to Plaintiffs or demonstrating how that duty was breached in their transactions. Instead, Plaintiffs rely on conclusory allegations of common control to impute liability to all Defendants. A court is not required to accept "mere conclusions characterizing pleaded facts or 'unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them.'" *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir.1990) (quotations omitted).

Defendants argue that Plaintiffs' attempt to lump all Defendants together in

the breach of fiduciary claim is an apparent attempt to create a "control person" liability argument for this claim. Defendants further note that control person liability is statutorily imposed, limited to securities law, and does not exist at common law. *See generally, Castleglen, Inc. v. Commonwealth Savings Ass'n,* 689 F.Supp. 1069 (D.Utah 1988) (discussing the statutory authority giving rise to the control person doctrine). The undersigned agrees that an attempt to impute liability for breach of fiduciary duty to the other Defendants under the guise of control person liability and without any well-pleaded facts of conspiracy is improper.

Therefore, the undersigned recommends that the District Court **DENY** Defendant Arthur Stockton's motion to dismiss Plaintiffs' claim of breach of fiduciary duty against him, and **GRANT** the remaining Defendants' motions to dismiss Plaintiffs' breach of fiduciary duty claim against them pursuant to Fed.R.Civ.P. 12(b)(6).

### F. FAILURE TO PLEAD SUFFICIENT FACTS TO SUPPORT A CLAIM FOR NEGLIGENCE

 In Count VI[sic] of their Complaint, Plaintiffs assert a claim for negligence against Defendants. Defendants have moved to dismiss Plaintiffs' negligence claim against them pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Plaintiffs have failed to allege any facts demonstrating that Defendants owed Plaintiffs a duty of care or that Defendants breached any such duty. Plaintiffs contend that, under Fed.R.Civ.P. 8(a), their complaint for negligence is sufficiently pled. The undersigned concludes that, under the liberal "notice pleading" contemplated by Fed.R.Civ.P. 8(a), Plaintiffs' negligence claim against Arthur Stockton has been sufficiently pled to put him on notice of Plaintiffs' claim against him. However, even under the liberal pleading standard in Rule 8(a), Plaintiffs' claim for negligence

against the remaining Defendants has not been sufficiently pled.

In reviewing the sufficiency of a Complaint, a court must accept all well-pleaded allegations as true and view them in the light most favorable to the pleader. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "Dismissal is proper only if it appears beyond reasonable doubt that the plaintiff can prove within such allegations no set of facts in support of the claim which would entitle him to relief." *See Bryson v. City of Edmond,* 905 F.2d 1386, 1390 (10th Cir. 1990) (citing *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987)). However, while all reasonable inferences that may be drawn from the allegations must be accepted, "mere conclusions characterizing pleaded facts are not, ... nor are 'unwarranted inferences drawn from the facts or footless conclusions of law predicated on them.'" *Id.* at 1390 (citations omitted).

The Federal Rules of Civil Procedure contemplate a more liberal standard of "notice pleading" for actions such as negligence, as compared to the more stringent pleading requirements for actions based, for example, in fraud. Specifically, Fed.R.Civ.P. 8(a)(2) states that a pleading setting forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief...."

 Under Oklahoma law, negligence is defined as "the failure to exercise ordinary care to avoid injury to another's person or property." Ordinary care is "the care which a reasonably careful person would use under the same or similar circumstances." *See* OUJI § 9.2. At a minimum, Plaintiffs are required to plead a *prima facie* case for negligence, which includes:

(1) The existence of a duty on the part of Defendants to protect Plaintiffs from injury;

(2) A violation or breach of that duty; and

(3) Injury to Plaintiffs proximately resulting from Defendants' breach.

*See Dirickson v. Mings*, 910 P.2d 1015, 1018 (Ok.1996); *see also Gresham v. Flowers*, 208 F.3d 226 (10th Cir.2000); *Stroud v. Arthur Andersen & Co.*, 37 P.3d 783, 788 (Ok.2001).

Specifically, Plaintiffs allege in the Complaint that:

> Defendants had a duty to properly oversee the Plaintiffs' investments and to manage Plaintiffs' accounts in a manner consistent with Plaintiffs' financial circumstance. Defendants breached this duty by failing to properly direct the investments of the Plaintiffs and by making trades on Plaintiffs' behalf that were unsuitable for and in total disregard to Plaintiffs' investment goals. As a direct and proximate result of the Defendants breaching their duty, Plaintiffs have suffered damages for which Defendants are liable.

[Complaint at Count VI[sic]]. Defendants attack the sufficiency of Plaintiffs' negligence pleading based on Plaintiffs' failure to distinguish among the Defendants; failure to identify a duty giving rise to a claim for negligence; and failure to allege facts demonstrating how Defendants breached their alleged duties.

Although Plaintiffs' Complaint leaves something to be desired in terms of specifying the facts supporting their claim for negligence, the undersigned is again reminded that the strict pleading requirements required under Rule 9(b) and the PSLRA are not applicable to negligence claims. Accordingly, based upon a review of the Complaint in its entirety, the undersigned finds that Plaintiffs have sufficiently pled duty and breach on the part of Defendant Arthur Stockton so as to put him on notice of the claims against him

under Rule 8(a)(2). However, Plaintiffs' allegations of negligence against the remaining Defendants fail, even under the liberal pleading standard of Rule 8(a).

Plaintiffs note that Arthur Stockton was acting in the capacity as Plaintiffs' investment adviser; Stockton is the president of TEAM; TEAM is the general partner of the Dymas Fund; Stockton controls and created all other Defendants; and that all Defendants, by and through Stockton, were acting in concert. [Complaint at ¶¶ 9, 14–16]. Plaintiffs have alleged that Defendants had a duty to oversee Plaintiffs' investments and accounts consistent with their financial situation and that, by failing to properly direct investments and by making trades unsuitable for Plaintiffs' investment goals, Defendants breached their duties. [Complaint at Count VI[sic]]. Moreover, Plaintiffs have alleged that Plaintiffs have suffered damages as a direct and proximate result of Defendants' breach.

Because the "issue in resolving a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims," the undersigned finds that Plaintiffs' allegation of negligence against Defendant Arthur Stockton has been sufficiently pled. *See Sheldon v. Vermonty*, 31 F.Supp.2d 1287, 1290 (D.Kan.1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Plaintiffs have adequately provided Defendant Stockton with notice of his alleged negligent acts. *Id.* at 1295.

However, even under the liberal pleading requirements in Rule 8(a), the undersigned does not find that Plaintiffs have adequately pled a cause of action against the remaining Defendants for negligence. Plaintiffs merely assert conclusory allegations regarding Arthur Stockton's creation and control over the other Defendants and, in turn, impute knowledge and wrongdoing

to all Defendants. Plaintiffs fail to plead any facts supporting an inference that the other Defendants owed a duty to Plaintiffs or demonstrating how that duty was breached in Plaintiffs' transaction. Instead, Plaintiffs rely on conclusory allegations of common control to impute liability to all Defendants. A court is not required to accept "mere conclusions characterizing pleaded facts or 'unwarranted inferences drawn from the facts or footless conclusions of law predicated upon them.'" *See Bryson v. City of Edmond,* 905 F.2d 1386, 1390 (10th Cir.1990) (quotations omitted).

Defendants again assert that Plaintiffs' attempt to lump all Defendants together in the negligence claim is an apparent attempt to create a "control person" liability argument for this claim. Defendants further note that control person liability is statutorily imposed, limited to securities law, and does not exist at common law. *See generally, Castleglen, Inc. v. Commonwealth Savings Ass'n,* 689 F.Supp. 1069 (D.Utah 1988) (discussing the statutory authority giving rise to the control person doctrine). The undersigned agrees that an attempt to impute liability for negligence to the other Defendants under the guise of control person liability is improper.

Accordingly, the undersigned recommends that the District Court **DENY** Defendant Arthur Stockton's motion to dismiss Plaintiffs' claim of negligence against him. The undersigned recommends that the District Court **GRANT** the remaining Defendants' motions to dismiss Plaintiffs' negligence claims against them.

**G.** **PLAINTIFFS' CLAIMS HAVE ABATED DUE TO FAILURE TO PROPERLY SERVE DEFENDANTS, WITH THE EXCEPTION OF THE DYMAS FUND, L.P. WITHIN THE 120–DAY PERIOD REQUIRED BY FED. R. CIV. P. 4(M)**

The undersigned recommends that the District Court **DENY** Defendants' motions to dismiss based on abatement of claims against all Defendants, with the exception of The Dymas Fund, for failure to effect service within the 120–day period under Fed.R.Civ.P. 4(m). The undersigned finds that the issue is now moot by virtue of Defendants' Response to Plaintiffs' motion for leave for additional time to serve Defendants, in which it is noted that all Defendants have been served, and Judge Payne's Order finding Plaintiffs' request for extension of time moot. [Doc. No. 22, 23].

**H.** **PLAINTIFFS CANNOT STATE A CLAIM FOR CONTROL–PERSON LIABILITY AGAINST ARTHUR STOCKTON BECAUSE THEY FAILED TO PROPERLY ALLEGE A VIOLATION OF SECURITIES LAWS BY ANY OF THE DEFENDANTS**

**1. Federal Law Securities Violations Under the 1934 Act (Section 10(b)/Rule 10b–5) and the 1933 Act for the Sale of Unregistered Securities**

In Count III ¶ 40 of their Complaint, Plaintiffs assert that Defendant Arthur Stockton "is a controlling person within the meaning of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t and is personally liable for all damages imposed for violation of the federal securities laws as asserted herein." Defendant Stockton counters that this claim must be dismissed. Plaintiffs' allegation of control person liability on the part of Arthur Stockton actually encompasses two aspects of federal securities laws: (1) control person liability under the 1934 Act for unlawful misrepresentations or omissions in violation of Section 10(b) and SEC Rule 10b–5; and (2) control person liability for violations of Section 12(a)(1) of the 1933 Act based on the sale of unregistered securities.

### (A) Control Person Liability under the 1934 Act

Section 20(a) of the 1934 Act provides as follows:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter [e.g., § 10(b) of the 1934 Act] or of any rule or regulation thereunder [e.g., SEC Rule 10b–5] shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

 To state a *prima facie* case of control person liability, Plaintiffs must plead and prove the following elements to recover under § 20(a) of the 1934 Act:

(1) That some person committed a primary violation of the securities laws (e.g., a violation of § 10(b) of the 1934 Act or § 12(a)(2) of the 1933 Act); and

(2) That the defendant had control over the primary violator.

*Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *see also Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1270–71 (10th Cir.2001) (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir.1998)). There is no requirement that plaintiff prove that the defendant actually or culpably participated in the primary violation—control is sufficient to attach liability. The defendant does, however, have an affirmative defense pursuant to which he must prove lack of culpable participation or knowledge. *Maher*, 144 F.3d at 1304–05.

 The undersigned finds that Plaintiffs have failed to satisfy the first prong of the *prima facie* case for control person. liability based on their inability to plead or establish a primary violation of federal securities laws. *See Fleming Cos.*, 264 F.3d at 1270. Even viewing the allegations in the light most favorable to Plaintiffs and assuming that Arthur Stockton, as President and creator of the other Defendants, is a controlling person over the remaining Defendants, Plaintiffs' Complaint fails to plead a primary violation of federal securities laws to sustain their claim of unlawful misrepresentations and omissions on the part of Defendants. Plaintiffs' fraud allegations are inadequate under Rule 9(b) and the PSLRA for lack of particularity.

Accordingly, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' claim of control person liability against individual Defendant Arthur Stockton for violations of the 1934 Act based on unlawful misrepresentations or omissions under Section 10b and SEC Rule 10b–5.

### (B) Control Person Liability under the 1933 Act

Plaintiffs' federal securities law violation claims also invoke control person liability under the 1933 Act for sale of unregistered securities.[9] At this time, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' claims based on their failure to plead a violation of federal registration requirements that fall within the applicable one-year statute of limitations period under 15 U.S.C. § 77m. Without pleading that Defendants violated federal securities laws within the limitations period, Plaintiffs have failed to demonstrate a primary

---

**9.** Plaintiffs' claims under Section 17(a) of the 1933 Act are moot in light of their concession that no private right of action exists under Section 17(a).

violation of federal securities laws to impute control person liability to Arthur Stockton. However, the undersigned recommends that the dismissal be **WITHOUT PREJUDICE** in light of the fact that the undersigned has previously recommended that the District Court grant Plaintiffs leave to amend their claims for the sale of unregistered securities in order to set forth facts bringing their claims within the one-year limitations period. Plaintiffs' ability to sufficiently plead facts which would bring their claims within the statutory period may impact the control person liability analysis. Therefore, if Plaintiffs are able to amend their pleadings to bring their federal securities laws violation claims for sale of unregistered securities within the one-year statute of limitations, the undersigned will examine this issue at that time.

### 2. State Law Securities Violations for Unlawful Misrepresentations or Omissions or the Sale of Unregistered Securities

■ The analysis for control person liability under Oklahoma securities law is similar to the federal analysis above. Again, Plaintiffs claims implicate control person liability for violations based on unlawful misrepresentations or omissions and for the sale of unregistered securities.

### (A) State Law Violations for Unlawful Misrepresentations or Omissions

■ Oklahoma law maintains a corollary to the federal provision for control person liability in Section 408(b) of the Oklahoma Securities Act, which provides as follows:

> Every person who materially participates or aids in a sale or purchase made by any person liable under [§ 408(a)(2)], or who directly or indirectly controls any person so liable, shall also be liable jointly and severally with and to the same extent as the person so liable, unless the person who so participates, aids or controls, sustains the burden of proof that he did not know, and could not have known, of the existence of the facts by reason of which liability is alleged to exist.

71 Okla. Stat. § 408(b).[10]

Plaintiffs must plead and prove the following elements to recover under § 408(b) of the Oklahoma Securities Act:

(1) That some person committed a primary violation of § 408(a) (e.g., § 408(a)(2)(A)); and

(2) That the Defendants either (i) materially participated or aided in the sale of securities by the primary violator, or (ii) had control over the primary violator.

*Sullivan Engine Works,* 910 P.2d at 1055–58; *Nikkel v. Stifel, Nicolaus & Co., Inc.,* 542 P.2d 1305, 1309 (Okla.1975).[11] Just as

---

**10.** One major difference exists, however. Section 408(b), unlike § 20(a), imposes liability for those that "materially participate or aid" in a securities sale made by a primary violator, as well as imposing liability on those who control a primary violator who sells a security. *See South Western Oklahoma Development Authority v. Sullivan Engine Works,* 910 P.2d 1052, 1058–59 (Okla.1996); *Wilson v. Al McCord Inc.,* 858 F.2d 1469, 1474 (10th Cir.1988).

**11.** Buyer's Reliance and Seller's Scienter Not Required— § 408(b) does not require the Plaintiffs to allege or prove reliance or the Defendants' scienter. However, § 408(b) does give the defendant an affirmative defense pursuant to which the defendant must prove that he did not know, and could not have known in the exercise of reasonable care, of the facts that formed the basis for the primary violator's liability. *See Buford White Lumber Co. Profit Sharing and Savings Plan & Trust v. Octagon Properties, Ltd.,* 740 F.Supp. 1553, 1569 n. 7 (W.D.Okla.1989).

in the federal analysis, even assuming that Arthur Stockton was the controlling person of the other Defendants, Plaintiffs have failed to plead with particularity their fraud claims and, as such, have not satisfied the first prong to impute control person liability—a primary violation of § 408(a)(2). Therefore, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss any claim by Plaintiffs against Arthur Stockton for control person liability under Oklahoma state law for unlawful misrepresentations or omissions under 71 Okla. Stat. § 408(a).

### *(B) State Law Violations for the Sale of Unregistered Securities*

Based on the undersigned's foregoing analysis on preemption of state law registration claims under NMSIA, and Plaintiffs' failure to rebut Defendants' argument that the state law claims are preempted, the undersigned recommends that the District Court **GRANT** Defendants' motions to dismiss Plaintiffs' state law registration claims because no primary violation of a securities law can be attributed to Arthur Stockton.

### *RECOMMENDATION*

For the foregoing reasons, the United States Magistrate Judge recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motions to Dismiss. [Doc. Nos. 4–1, 25–1, 26–1, 27–1, 30–1]. Specifically, the undersigned has recommended that the District Court grant Defendants' motions to dismiss all of Plaintiffs' claims as against all Defendants, with the exception of the following: (1) Plaintiffs' claim against individual Defendant Arthur Stockton for breach of fiduciary duty/inappropriate investment advice; and (2) Plaintiffs' claim against Defendant Arthur Stockton for negligence. Additionally, the undersigned has recommended that Plaintiffs' claim for violation of federal securities law under the 1933 Act for the sale of unregistered securities be dismissed without prejudice, and leave granted to amend Plaintiffs' Complaint, in order for Plaintiffs to set forth details of ongoing purchases and facts specifying what unregistered securities were bought or sold so as to fall within the applicable one-year statute of limitations. The undersigned also recommends that Plaintiffs' claim of control person liability for violation of the 1933 Act in the sale of unregistered securities be dismissed without prejudice because Plaintiffs' potential to amend their Complaint and set forth details bringing their claim within the one-year statutory period may impact the control person liability analysis.

### *OBJECTIONS*

The District Judge assigned to this case will conduct a *de novo* review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned. As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation. A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court. *See Moore v. United States,* 950 F.2d 656 (10th Cir.1991); *Talley v. Hesse,* 91 F.3d 1411, 1412–13 (10th Cir.1996).

Dated: April 16, 2003.